MICHAEL RUBIN (80618)
mrubin@altber.com
EVE H. CERVANTEZ (164709)
ecervantez@altber.com
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Tel:  415-421-7151
Fax:  415-362-8064

JAMES F. CLAPP (145814)
jclapp@clapplegal.com
MARITA MURPHY LAUINGER (199242)
mlauinger@clapplegal.com
CLAPP & LAUINGER LLP
701 Palomar Airport Road, Suite 300
Carlsbad, California 92011
Tel:  760-209-6565 ext. 101
Fax:  760-209-6565

Attorneys for Plaintiff
CALI BUNN

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| CALI BUNN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NIKE, INC., an Oregon corporation,<br><br>Defendant. | CASE NO.  20-cv-7403-YGR<br><br>**PLAINTIFF'S UNOPPOSED MOTION TO APPROVE CLASS ACTION SETTLEMENT FOR INJUNCTIVE RELIEF AND TO APPROVE ATTORNEYS' FEES, COSTS, AND A SERVICE AWARD TO PLAINTIFF**<br><br>DATE:  April 20, 2021<br>TIME:  2:00 p.m.<br>DEPT:  Courtroom 1 – 4th Floor<br><br>Judge:  Hon. Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

NOTICE OF MOTION ........................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 3

I.      INTRODUCTION ...................................................................................................... 3

II.     STATEMENT OF RELEVANT FACTS ................................................................... 5

III.    NOTICE IS NOT REQUIRED FOR THIS RULE 23(b)(2) INJUNCTIVE RELIEF

        SETTLEMENT ........................................................................................................... 8

IV.     THE SETTLEMENT MEETS THE STANDARD FOR APPROVAL UNDER FED.

        R. CIV. P. 23(e) ......................................................................................................... 9

        A.  Plaintiff and Class Counsel Adequately Represented the Class ......................... 10

        B.  The Settlement Was Negotiated at Arm's Length ................................................ 10

        C.  The Relief Provided by the Settlement is Adequate ............................................ 11

        D.  The Settlement Treats Class Members Equally .................................................... 12

V.      THE COURT SHOULD CERTIFY THE SETTLMENT CLASS PURSUANT TO

        FED. R. CIV. P. 23(b)(2) .......................................................................................... 12

VI.     THE COURT SHOULD AWARD THE REQUESTED FEES AND COSTS .......... 14

        A.  The Court Should Apply the Lodestar Method .................................................... 14

        B.  Plaintiff's Fees Request Reflects a Significant Downward Adjustment of Class

            Counsel's Lodestar, is Reasonable, and Should be Awarded .............................. 15

        C.  Class Counsel Are Entitled to Recover Their Reasonable Litigation Costs and

            Expenses, Which Have Benefitted the Class ....................................................... 16

VII.    THE COURT SHOULD APPROVE THE REQUESTED SERVICE AWARD ...... 16

VIII.   CONCLUSION ......................................................................................................... 17

1

## TABLE OF AUTHORITIES

Page

**Cases**

*Amchem Products, Inc. v. Windsor*
  521 U.S. 591 (1997)..........................................................................................13

*Arnold v. UA Theatre Circuit, Inc.*
  158 F.R.D. 439 (N.D. Cal. 1994)......................................................................14

*Blum v. Stenson*
  *465 U.S. 886 (1984)* ........................................................................................15

*Chun–Hoon v. McKee Foods Corp.*
  716 F.Supp.2d 848 (N.D.Cal.2010) ..................................................................11

*Consolidated Rail Corp. v. Town of Hyde Park*
  47 F.3d 473 (2nd Cir. 1995) ..............................................................................13

*DL v. District of Columbia*
  Case No. 05-cv-1437, 302 F.R.D. 1, 2013 U.S. Dist. LEXIS 160018, at *17 (D.D.C. Nov. 8, 2013)...........................................................................................................9

*EEOC v. Kovacevich "5" Farms*
  2007 U.S. Dist. LEXIS 32330, at *57, 100 Fair Empl. Prac. Cas. (BNA) 944, (E.D. Cal. Apr. 19, 2007) ..........................................................................................13

*G.F. v. Contra Costa Cty.*
  2015 U.S. Dist. LEXIS 159597, at *48 (N.D. Cal. Nov. 25, 2015)...................16

*Green v. Am. Express Co.*
  200 F.R.D. 211, 212-13 (S.D.N.Y. 2001)...........................................................8

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011, .................................................................................................14

*Harris v. Marhoefer*
  24 F.3d 16 (9th Cir. 1994) ................................................................................16

*Hopson v. Hanesbrands, Inc.*
  2009 U.S. Dist. LEXIS 33900 ..........................................................................17

*In re Mego Fin. Corp. Sec. Litig.*
  213 F.3d 454 (9th Cir. 2000). .....................................................................10, 17

*In re Wells Fargo Loan Processor Overtime Pay Litig.*
  2011 U.S. Dist. LEXIS 84541, at *16 (N.D. Cal. Aug. 2, 2011).......................11

*Jermyn v. Best Buy Stores*
  2012 U.S. Dist. LEXIS 90289, at *32 (S.D.N.Y. June 27, 2012) .......................8

*Jones v. Cal State Auto Ass'n*
  2009 U.S. Dist. LEXIS 101586 .........................................................................17

iii

*Lilly v. Jamba Juice Co.*
  2015 U.S. Dist. LEXIS 34498 (N.D. Cal. Mar. 18, 2015) .................................. 8, 9, 11, 12

*Linquist v. Bowen*
  633 F. Supp. 846 (W.D. Mo. Jan 31, 1986) ............................................................. 9

*Mamula v. Satralloy, Inc.*
  578 F. Supp. 563 (S.D. Ohio Sep. 7, 1983) ............................................................. 9

*Missouri v. Jenkins*
  491 U.S. 274 (1989) ....................................................................................... 15

*Moeller v. Taco Bell Corp.*
  220 F.R.D. 604, 612-13 (N.D. Cal. 2004) ............................................................. 14

*Penland v. Warren Cnty. Jail*
  797 F.2d 332 (6th Cir. 1986) ......................................................................... 8, 9

*Prison Legal News v. Schwarzenegger*
  608 F.3d 446 (9th Cir. 2010) ........................................................................... 15

*Stathakos v. Columbia Sportwear Co.*
  2018 U.S. Dist. LEXIS 17138, at *7-8  (N.D. Cal. Jan. 25, 2018) .................................. 4, 8

*Staton v. Boeing Co.*
  327 F.3d 938 (9th Cir. 2003) ........................................................................... 14

*Vincent v. Hughes Air W., Inc.*
  557 F.2d 759 (9th Cir. 1977) ........................................................................... 16

*Wal-Mart Stores, Inc. v. Dukes*
  131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) ............................................................. 8

**Statutes**

28 U.S.C. § 1715(b) ......................................................................................... 5

28 U.S.C. § 1715(d) .................................................................................. 1, 5, 17

42 U.S.C. § 12181 ........................................................................................... 5

42 U.S.C. § 12182(b)(1)(A)(1) ............................................................................. 3

42 U.S.C. § 12205 ......................................................................................... 14

Cal. Civ. Code § 51 ......................................................................................... 5

Cal. Civ. Code § 52.1(f) ................................................................................. 12

Cal. Civ. Code § 54 ......................................................................................... 5

Cal. Civ. Code § 54.3(a) ................................................................................. 12

Cal. Civ. Code § 55 ....................................................................................... 14

iv

**Other Authorities**

"For the Deaf, Social Distancing Can Mean Social Isolation," *The New York Times*, June 4, 2020 (https://www.nytimes.com/2020/06/04/us/coronavirus-deaf-culture-challenges.html) .. 3

Journal of Deaf Studies and Deaf Education, Vol 11(1):112-9, Winter 2006 ....................... 13

**Rules**

Fed. R. Civ. P.  23(a) ..................................................................................................... 12, 13

Fed. R. Civ. P. 23(b)(2) ................................................................................................*passim*

Fed. R. Civ. P. 23(b)(3) ......................................................................................................... 4

Fed. R. Civ P. 23(c)(2) ...................................................................................................... 8, 9

Fed. R. Civ. P. 23(e) .............................................................................................. 1, 9, 10, 14

**Regulations**

28 C.F.R. § 36.303(a) ............................................................................................................ 3

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on April 20, 2021 at 2:00 p.m. in Courtroom 1 of the above-captioned Court, the Hon. Yvonne Gonzalez Rogers presiding, plaintiff Cali Bunn will move for (1) approval of a proposed class action settlement for injunctive relief, the terms of which are contained in the Settlement Agreement attached as Exhibit 1 to the Declaration of James F. Clapp, filed herewith; (2) certification pursuant to Fed. R. Civ. P. 23(b)(2) of the following settlement class: "All persons who are deaf or hard of hearing and who visited or attempted to visit a [Nike retail] Store in California from June 18, 2020 to the date the Court issues the Final Approval Order for this settlement"; (3) approval of Class Counsel's attorneys' fees and costs in the total amount of $85,000; and (4) approval of a service award to the named plaintiff in the amount of $5,000.[1]

As discussed in the attached Memorandum of Points and Authorities, the proposed settlement is fair, reasonable, and adequate under the factors set forth in Fed. R. Civ. P. 23(e). Moreover, the settlement class is properly certified under Rule 23(b)(2) because the class alleges defendant Nike, Inc. "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Id.* For the reasons set forth in the attached memorandum, this Rule 23(b)(2) settlement does not require a two-step approval process or class notice.

Class Counsel's request for fees and costs totaling $85,000 should be approved since it represents just 49% of their actual lodestar amount. The $5,000 service award to plaintiff Cali Bunn is reasonable in light of the time she spent, and the risk she undertook, in bringing this lawsuit on behalf of the class.

This motion is based on this Notice, the attached Memorandum of Points and Authorities, the declarations of Michael Rubin and James F. Clapp, the Settlement

---

[1] Pursuant to 28 U.S.C. § 1715(d), the Court cannot order final approval until at least 90 days have elapsed after defendant served notice of this settlement on the appropriate federal and state officials pursuant to Section 1715(b). Nike served the required notices on January 14, 2021 and will be filing proof of compliance with this notice requirement. Thus, the final approval order cannot be entered before April 13, 2021 to comply with the CAFA notice requirement.

1  Agreement attached as Exhibit 1 to the Clapp Decl., the pleadings filed in this action, and on

2  such further evidence and argument as may be presented at the hearing.

3   Dated:  January 26, 2021                CLAPP & LAUINGER LLP

4

5                                            /s/ James F. Clapp

6                                            JAMES F. CLAPP
                                             MARITA MURPHY LAUINGER
7
                                             MICHAEL RUBIN
8                                            EVE H. CERVANTEZ
                                             ALTSHULER BERZON LLP
9                                            Attorneys for Plaintiff
                                             CALI BUNN
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Cali Bunn, a 22-year-old college student who is deaf, filed this lawsuit against defendant Nike, Inc. to address an important but overlooked pandemic-related problem that has affected millions of Californians who are deaf or hard of hearing.

In response to the COVID-19 pandemic, Nike—like virtually all other retailers and customer-facing businesses in California—instituted a policy requiring all of its employees to wear face coverings when interacting with customers.  Plaintiff agrees that face coverings are necessary to protect public health, but plaintiff alleges Nike has implemented its policy in a way that discriminates against people who are deaf or hard of hearing.  Specifically, Nike permits its employees to wear *opaque* face masks while interacting with customers. Not only do opaque masks muffle sound, but they also block visualization of the wearer's mouth and facial expressions, which people with hearing loss rely on to understand speech.[2]

Under federal and state law, plaintiff contends Nike has a duty to provide auxiliary aids or other reasonable accommodations to customers who are deaf or hard of hearing to ensure they can communicate effectively with Nike's employees.  *See* 42 U.S.C. § 12182(b)(1)(A)(1) (denying "goods, services, facilities, privileges, advantages, or accommodations" to a person with a disability violates the Americans with Disabilities Act); 28 C.F.R. § 36.303(a) (public accommodation has duty to provide "auxiliary aids and services" to ensure effective communication). Plaintiff alleges Nike has failed to accommodate customers who are deaf or hard of hearing and who have been adversely affected by its mandatory face covering policy.

After several months of investigation, consultation with experts, and arm's-length negotiations, plaintiff and Nike have reached a proposed class action settlement that provides immediate and meaningful injunctive relief to the thousands of deaf or hard of hearing

---

[2]  *See, e.g.,* "For the Deaf, Social Distancing Can Mean Social Isolation," *The New York Times*, June 4, 2020 (https://www.nytimes.com/2020/06/04/us/coronavirus-deaf-culture-challenges.html) (explaining that face masks are a barrier to communication for individuals who are deaf or hard of hearing).

customers who will visit Nike's retail stores in California while Nike's face covering policy remains in effect.  As discussed in more detail below, the settlement requires Nike to: (1) provide guidance and communications to its California store employees to accommodate customers who are having difficulty communicating due to an employee wearing an opaque face covering; (2) post notices at California store entrances informing customers that accommodations are available for customers with hearing loss; and (3) provide its California stores with transparent face masks and clean pen-and-paper sets in case a customer requests an accommodation. The proposed settlement agreement requires Nike to come into compliance with these requirements no later than January 22, 2021 (14 days after the settlement was executed) and, subject to Court approval of this settlement, to continue to provide this relief for as long as its face covering policy remains in effect.

The proposed settlement addresses and resolves injunctive relief claims only.  Apart from plaintiff Bunn, it *does not release* or otherwise limit any class member's potential claim against Nike for compensatory damages, statutory damages, punitive damages, or any other form of monetary relief in any proceeding that may be brought in the future.

For the reasons discussed below, the Court should certify the proposed injunctive relief class pursuant to Fed. R. Civ. P. 23(b)(2) and approve the settlement.  As this Court held in *Stathakos v. Columbia Sportwear Co.*, 2018 U.S. Dist. LEXIS 17138, at *7-8 (N.D. Cal. Jan. 25, 2018), when a class action settlement provides for injunctive relief only and expressly preserves the class members' rights to bring claims for monetary relief—as in this case—class notice is not required.  Accordingly, there is no need for the Court to "preliminarily approve" the settlement, issue notice, and then hold a final approval hearing. Rather, the Court can grant final approval to the parties' agreed-upon settlement without undertaking the two-step approval process that is typically followed in Rule 23(b)(3) class actions.

In addition, under paragraphs 42-43 of the Settlement Agreement, Nike has agreed to pay up to $85,000 for Class Counsel's court-approved attorneys' fees and costs and up to $5,000 for a Court-approved service award to plaintiff.  Those amounts are reasonable and

4

1  should also be approved.  The requested fee represents just 49% of Class Counsel's actual

2  lodestar amount, and the $5,000 service award is in line with awards in similar class action

3  cases in this District and is justified in light of plaintiff's service to the class.

4          Pursuant to 28 U.S.C. § 1715(b), Nike is required to provide notice of this settlement

5  to the attorneys general of the United States and the State of California no later than 10 days

6  after the filing of this motion.  Under Section 1715(d), this Court may not issue an order

7  granting final approval until 90 days have elapsed following Nike's service of the notices.

8  Nike served the required notices on January 13, 2021 and will file proof of its compliance

9  with Section 1715(b).  Thus, the final approval order cannot be entered before April 13, 2021

10  to comply with the CAFA notice requirement.

11  **II.  STATEMENT OF RELEVANT FACTS**

12          On July 12, 2020, plaintiff visited a Nike retail store in San Diego, California.  One

13  month prior, Nike had instituted a statewide policy requiring all of its retail store employees

14  to wear face coverings, as required by state mandate to reduce the spread of COVID-19.

15  Upon entering the Nike store, plaintiff attempted to ask a Nike employee for assistance to

16  help her locate a pair of shoes.  However, plaintiff was unable to communicate with the

17  employee because he was wearing a Nike-mandated opaque face mask, which muffled his

18  speech and prevented plaintiff from reading his lips.  Plaintiff alleges that although she told

19  the employee she could not understand him because of his mask, the employee failed to offer

20  plaintiff any type of reasonable accommodation—which might have included, for example,

21  donning a transparent face mask or offering to communicate with plaintiff in writing.

22  Complaint ¶¶ 10-12.

23          On September 22, 2020, plaintiff filed a putative class action lawsuit against Nike in

24  the San Francisco County Superior Court.  Plaintiff's complaint alleged three claims for

25  relief: (1) violation of Title III of the Americans with Disabilities Act (42 U.S.C. §§ 12181 *et*

26  *seq.*); (2) violation of California's Unruh Civil Rights Act (Cal. Civ. Code §§ 51 *et seq.*); and

27  (3) violation of the California Disabled Persons Act (Cal. Civ. Code §§ 54 *et seq.*).  On

28  October 22, 2020, Nike removed the lawsuit to this Court.

5

The parties immediately commenced settlement negotiations.  Plaintiff's counsel,

Michael Rubin and Eve Cervantez of Altshuler Berzon LLP and James F. Clapp of Clapp &

Lauinger LLP, are experienced class action attorneys who have handled numerous civil

rights and disability discrimination cases.  Declaration of Michael Rubin, ¶¶ 4, 6; Declaration

of James F. Clapp, ¶ 2.  Before commencing settlement discussions, plaintiff's counsel

visited seven Nike retail stores to confirm that Nike's policies are uniform throughout the

state.  Plaintiff's counsel also retained an expert witness to investigate and evaluate the types

of reasonable accommodations Nike could have provided to plaintiff.  Clapp Decl. ¶ 3.

After more than two months of negotiations, the parties on January 8, 2021 signed the

Settlement Agreement ("Agreement") attached as Exhibit 1 to the Clapp Decl.   Under the

Agreement, the parties have stipulated to certification of the following Settlement Class

pursuant to Fed. R. Civ. P. 23(b)(2): "All persons who are deaf or hard of hearing and who

visited or attempted to visit a [Nike retail] Store in California from June 18, 2020 to the date

the Court issues the Final Approval Order for this settlement."  Agreement ¶ 20.[3]

Consistent with Rule 23(b)(2), the classwide relief provided by the parties' settlement

is *non-monetary* in nature. That relief requires Nike, no later than January 22, 2021, to

implement the following practices in its California stores and to maintain those practices in

effect throughout the time Nike maintains its mandatory face covering policy:

1.  Nike will make available to each Nike retail store in California ("Store") a

sufficient number of masks with transparent windows over the mouth area to enable those

Stores' employees, without unreasonable delay, to obtain and use transparent-window masks

during conversations with customers who are deaf or hard of hearing who indicate they

---

[3]  The Complaint defined the class as "[A]ll individuals in California who are deaf or hard of
hearing" and also defined a "statutory damages Subclass" as "[A]ll Class members who,
since the onset of the COVID-19 pandemic and Nike's implementation of its mandatory
mask-wearing policy, shopped or desired to shop at a Nike retail store in California whose
customer-interacting employees wore opaque face masks."  Complaint ¶ 10.  The Agreement
correctly narrows the class definition to deaf or hard of hearing persons *who visited or
attempted to visit a Nike store*.  The Agreement also eliminates the statutory damages
subclass because, as discussed below, the settlement provides only injunctive relief and
preserves the right of any class member to seek monetary relief in a subsequent individual or
class action.

6

prefer to communicate through speechreading; and Nike shall replenish the supply of such masks as reasonably necessary.  Plaintiff's counsel have inspected and approved the transparent mask Nike intends to use.  Agreement ¶ 22(a); Clapp Decl. ¶ 5.

2.  Nike will make available clean pens and paper at each Store to facilitate the exchange of notes with customers who are deaf or hard of hearing and indicate they prefer to communicate in writing.  Agreement ¶ 22(b).

3.  Nike will provide guidance and communications to employees working in Stores regarding how to accommodate customers who are deaf or hard of hearing and regarding the availability and proper usage of the transparent masks and clean pens and paper with such customers.  Agreement ¶ 22(c).

4.  Nike will post notices near the entrances of Stores to advise customers who are deaf or hard of hearing that they may ask a Store employee for additional assistance, which might include having the employee don a transparent face mask or communicate with the customer in writng.  Plaintiff's counsel have reviewed and approved the content of the postings.  Agreement ¶ 22(d); Clapp Decl. ¶ 5.

In addition, Nike has agreed to reimburse plaintiff's counsel's court-approved attorneys' fees and costs up to $85,000 and will pay a court-approved service award to plaintiff not to exceed $5,000.  Agreement ¶¶ 42-43.  The settlement is not contingent on the Court awarding either of these amounts.  Agreement ¶ 44.

In exchange, Nike will receive a release of all *non-monetary* claims that were alleged or could have been alleged based on the allegation in the Complaint that Nike's policy of requiring its employees to wear face coverings discriminated against members of the Settlement Class.  In addition, plaintiff Bunn will give Nike a general release, which encompasses her claims for damages and statutory penalties (which, under the Unruh Act, are $4,000 per violation).  Agreement ¶¶ 16, 29-31.

The Agreement does not limit or otherwise affect any Settlement Class member's right to assert claims for monetary relief against Nike, now or in the future.  Paragraph 16 of the Agreement expressly states: "With respect to Class Members other than Plaintiff Class

7

Representative, Released Claims shall not include any claim for damages, penalties, or other forms of monetary relief, or any claim for attorneys' fees or costs arising therefrom, the Settlement Class members had, have, or may have in the future against any of the Releasees." Agreement ¶ 16.

## III.   NOTICE IS NOT REQUIRED FOR THIS RULE 23(B)(2) INJUNCTIVE RELIEF SETTLEMENT

Fed. R. Civ P. 23(c)(2) states: "For any class certified under Rule 23(b)(1) or (b)(2), the court *may* direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2) (emphasis added).  Because this language is permissive rather than mandatory, classwide notice is not required in Rule 23(b)(2) class actions, in part because class members do not have the right to opt out.  *Stathakos*, 2018 U.S. Dist. LEXIS 17138, at *7-8 (holding that notice and opt out were not required for a Rule 23(b)(2) settlement); *Lilly v. Jamba Juice Co.*, 2015 U.S. Dist. LEXIS 34498, at *25-26 (N.D. Cal. Mar. 18, 2015) (holding that because the settlement class members would not have the right to opt out from the injunctive settlement and because the settlement does not release the monetary claims of class members, class notice is not necessary); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558, 180 L. Ed. 2d 374 (2011) (Rule 23 "provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action.").

Federal courts in other districts have uniformly held that notice is not required in Rule 23(b)(2) class action settlements. *Jermyn v. Best Buy Stores*, 2012 U.S. Dist. LEXIS 90289, at *32 (S.D.N.Y. June 27, 2012) ("Because this injunctive settlement specifically preserves and does not release class members' monetary claims, notice to class members is not required"); *Green v. Am. Express Co.*, 200 F.R.D. 211, 212-13 (S.D.N.Y. 2001) (no notice is required under several circumstances, such as "when the settlement provides for only injunctive relief, and therefore, there is no potential for the named plaintiffs to benefit at the expense of the rest of the class"); *Penland v. Warren Cnty. Jail*, 797 F.2d 332, 334 (6th Cir. 1986) ("this court has specifically held that notice to class members is not required in all F.R.C.P. 23(b)(2) class actions"); *DL v. District of Columbia*, Case No. 05-cv-1437, 302

8

F.R.D. 1, 2013 U.S. Dist. LEXIS 160018 at *17 (D.D.C. Nov. 8, 2013) ("the district courts within these circuits that have directly considered the issue have applied the requirement 'more flexibly in situations where individual notice to class members is not required, such as suits for equitable relief'"); *Linquist v. Bowen*, 633 F. Supp. 846, 862 (W.D. Mo. Jan 31, 1986) ("When a class is certified pursuant to Rule 23(b)(2), Federal Rules of Civil Procedure, notice to the class members is not required.") (internal citations omitted); *Mamula v. Satralloy, Inc.*, 578 F. Supp. 563, 572 (S.D. Ohio Sep. 7, 1983) ("This Court has certified this action as a class action under Rule 23(b)(2), and, as such, notice to class members is not required under Rule 23(c)(2)").

Here, the Agreement provides for injunctive relief only and preserves the rights of Settlement Class members to bring claims for monetary relief.  Agreement ¶ 16. Further, even if notice were sent, class members would not have the right to opt out. *See Lilly*, 2015 U.S. Dist. LEXIS 34498, at *25-26.  Therefore, class notice would not serve any purpose and is not required.

## IV.    THE SETTLEMENT MEETS THE STANDARD FOR APPROVAL UNDER FED. R. CIV. P. 23(e)

Class actions may be settled only with the court's approval, and only after the court finds the settlement proposal to be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In evaluating a settlement proposal, the district court must consider whether:

| | | |
|---|---|---|
| (A) | the class representatives and class counsel have adequately represented the class; | |
| (B) | the proposal was negotiated at arm's length; | |
| (C) | the relief provided for the class is adequate, taking into account: | |
| | (i) | the costs, risks, and delay of trial and appeal; |
| | (ii) | the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; |
| | (iii) | the terms of any proposed award of attorney's fees, including timing of payment; and |
| | (iv) | any agreement required to be identified under Rule 23(e)(3); and |

(D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  Each of these factors weighs in favor of approval.

### A.     Plaintiff and Class Counsel Adequately Represented the Class

Adequacy of representation turns on two issues: (1) whether the plaintiff has any conflicts of interests with other class members; and (2) whether the plaintiff and class counsel have vigorously prosecuted the action on behalf of the class.  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000).

First, there is no conflict of interest between plaintiff (or her counsel) and the Settlement Class members because the injunctive relief provided by the settlement applies equally to everyone.  Further, plaintiff's request for an incentive award of up to $5,000 is consistent with recent awards in this District and does not undermine plaintiff's adequacy.

Second, plaintiff and her counsel have vigorously represented the class.  Class Counsel are highly qualified class action attorneys with specific experience in civil rights and disability discrimination cases.  Rubin Decl., ¶¶ 4, 6; Clapp Decl., ¶ 2.  Class Counsel thoroughly investigated the relevant facts, claims, and legal defenses before entering into settlement negotiations with Nike.  Formal discovery was not necessary because the key issue in the case—Nike's policy and practice of requiring its California employees to wear face coverings—was not in dispute.  The parties were therefore able to discuss the reasons for Nike's policy, the applicable law, and the needs of the settlement class without needing to resort to drawn-out, expensive litigation.  Clapp Decl. ¶ 3.

### B.     The Settlement Was Negotiated at Arm's Length

The settlement negotiations, while cordial, were at all times adversarial, non-collusive and conducted at arm's-length.  The parties exchanged numerous offers and counteroffers, and the proposed settlement represents the "last, best and final" offer by both sides. Clapp Decl. ¶ 4.  Because the parties' attorneys are very experienced in this area of law, there was no need to engage an independent mediator, and a mediation would have only delayed resolution of the case as well as the implementation of the injunctive relief.

10

### C.    The Relief Provided by the Settlement Is Adequate

The injunctive relief provided in the Settlement Agreement is substantial and represents a reasonable compromise between Nike's need to protect the health and safety of its employees and its legal duty, as a public accommodation, to ensure that customers who are deaf or hard of hearing are able to communicate effectively.  All Settlement Class members will benefit from the injunctive relief and will be notified about their right to access accommodations through signage posted at every California Nike store (the text, graphics, and placement of which were also the subject of extensive negotiations).  Additionally, to ensure the Settlement Class will receive the benefits of the injunctive relief quickly, Nike agreed to implement that relief within 14 days of the execution of the Settlement Agreement. Agreement ¶ 22.  This is significant because if this case were to be litigated through trial and potential appeal, it would take several months or years for the class to receive injunctive relief (if at all), and by that time, the pandemic—and the need for injunctive relief—would hopefully be long over.

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to prove their case.  *Chun–Hoon v. McKee Foods Corp.*, 716 F.Supp.2d 848, 851 (N.D.Cal.2010).  Generally, "fact-intensive inquiries and developing case law present significant risks to Plaintiffs' claims and potential recovery."  *In re Wells Fargo Loan Processor Overtime Pay Litig.*, 2011 U.S. Dist. LEXIS 84541, at *16 (N.D. Cal. Aug. 2, 2011).  Nike's potential liability in this case would hinge on factual and legal determinations of whether Nike was providing adequate accommodations to customers who are deaf or hard of hearing while at the same time requiring employees to wear face coverings to help prevent the spread of COVID-19.  There are no published cases addressing this factual scenario, which presents uncertainty.  While plaintiff believes she would prevail on the merits, she also faced a significant risk of non-recovery in this case.  *See Lilly v. Jamba Juice Co.*, 2015 U.S. Dist. LEXIS 34498, at *22 (N.D. Cal. May 4, 2015) (uncertainty of recovery weighs in favor of approval).

1    As noted above, apart from plaintiff Bunn, the proposed settlement does not limit or

2    otherwise affect the right of any class member to seek monetary recovery against Nike based

3    on its mandatory face-covering policy.  Accordingly, there is no need for the Court to

4    evaluate what Nike's potential monetary exposure might have been had plaintiff prevailed.[4]

5    Settling for injunctive relief for the class now, while the need for such relief is immediate and

6    while preserving class members' ability to seek monetary damages if they so choose, is a

7    practical and reasonable compromise that is highly beneficial to the class.

8         Finally, as explained below, Class Counsel's request for $85,000 in fees and costs

9    represents just 49% of their actual lodestar, and the requested $5,000 service award is in line

10   with recent awards in this District.  There are no undisclosed agreements between the parties

11   or their counsel.  Clapp Decl. ¶ 4.

12        **D.    The Settlement Treats Class Members Equally**

13        As noted above, all Settlement Class members will benefit equally from the proposed

14   injunctive relief.

15   **V.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS PURSUANT**

16   **TO FED. R. CIV. P. 23(B)(2)**

17        Under Fed. R. Civ. P. 23(a), a class action is proper if: "(1) the class is so numerous

18   that joinder of all members is impracticable; (2) there are questions of law or fact common to

19   the class; (3) the claims or defenses of the representative parties are typical of the claims or

20   defenses of the class; and (4) the representative parties will fairly and adequately protect the

21   interests of the class."  *Id.*

22        Each Rule 23(a) requirement is satisfied here.  First, courts find "numerosity" when

23   the class consists of at least 40 members.  *EEOC v. Kovacevich "5" Farms*, 2007 U.S. Dist.

24   LEXIS 32330 at *57, 100 Fair Empl. Prac. Cas. (BNA) 944, (E.D. Cal. Apr. 19, 2007);

25   *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2nd Cir. 1995)

26

27   ───────────────
[4]  The Unruh Civil Rights Act imposes statutory damages of no less than $4,000 per
violation, and the California Disabled Persons Act carries statutory damages of $1,000 per
28   violation.  Cal. Civ. Code §§ 52.1(f), 54.3(a).

(numerosity presumed when class is comprised of 40 members). Although the parties do not know the precise number of persons with hearing disabilities who have visited or attempted to visit a Nike store in California since the pandemic began, according to one study up to 5% of the U.S. population is deaf or hard of hearing.[5]  Since Nike operates 38 retail stores in California, which have served thousands of customers since the pandemic began, it is reasonable to assume the class consists of far more than 40 members.  Second, there are questions of law and fact common to the class, including (1) whether a customer who is deaf or hard of hearing can state a claim for disability discrimination based on a policy adopted in response to a public health crisis; and (2) whether opaque face masks are in fact a barrier to communication for people who are deaf or hard of hearing.  Third, plaintiff's claim is typical of those of the other class members because plaintiff, like other Settlement Class members, visited a Nike store in California and claims she experienced communication difficulties and was denied service due to Nike's mandatory face covering policy. Fourth, as discussed above, plaintiff has no conflicts of interest with other members of the class, and her attorneys are well-qualified to handle this lawsuit.

Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Id.* "[C]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of cases that are appropriate for Rule 23(b)(2) certification. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  Courts in this District routinely certify disability discrimination claims under Rule 23(b)(2). *See, e.g., Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 612-13 (N.D. Cal. 2004); *Arnold v. UA Theatre Circuit, Inc.*, 158 F.R.D. 439, 461-62 (N.D. Cal. 1994).

---

[5]  Mitchell, R., "How many deaf people are there in the United States? Estimates from the Survey of Income and Program Participation," *Journal of Deaf Studies and Deaf Education*, Vol 11(1):112-9, Winter 2006.

1    Here, it is undisputed that Nike has a uniform policy requiring its retail employees in

2  California to wear face coverings, and the alleged harm to deaf and hard of hearing

3  customers arises from this uniform policy.  Moreover, as noted above, plaintiff is an adequate

4  class representative, she has no conflicts of interest, and her attorneys are well-qualified.

5  Certification for settlement purposes is therefore appropriate under Rule 23(b)(2).

6  **VI.     THE COURT SHOULD AWARD THE REQUESTED FEES AND COSTS**

7    **A.     The Court Should Apply the Lodestar Method**

8    "Attorneys' fees provisions included in proposed class action settlement agreements

9  are, like every other aspect of such agreements, subject to the determination whether the

10  settlement is 'fundamentally fair, adequate, and reasonable.'" *Staton v. Boeing Co.*, 327 F.3d

11  938, 963 (9th Cir. 2003) (citing Fed. R. Civ. P. 23(e)). Even where the defendant "agrees to

12  pay the fees independently of any monetary award or injunctive relief provided to the class,"

13  the Court must ensure that the fees requested are reasonable. *Id.* at 964.

14    The federal and state statutes pleaded by plaintiff in her Complaint each contain a fee-

15  shifting provision.  *See* 42 U.S.C. § 12205; Cal. Civ. Code § 55.  In cases arising under

16  statutory fee-shifting statutes, the reasonableness of the fees requested is properly measured

17  using the "lodestar method"—i.e., by "multiplying the number of hours the prevailing party

18  reasonably expended on the litigation by a reasonable hourly rate, and, if circumstances

19  warrant, adjusting the lodestar to account for other factors which are not subsumed within it."

20  *Staton*, 327 F.3d at 965 (citations and alterations omitted); *Hanlon v. Chrysler Corp.*, 150

21  F.3d 1011, 1029 ("In employment, civil rights and other injunctive relief class actions, courts

22  often use a lodestar calculation because there is no way to gauge the net value of the

23  settlement or any percentage thereof.").  Moreover, since two of plaintiff's three claims are

24  based on California law, the Court is permitted to apply a multiplier to the lodestar amount to

25  compensate Class Counsel for the results they achieved, the quality of their representation,

26  and their contingency risk. *Laffitte v. Robert Half Int'l, Inc.*, 1 Cal.5th 480, 489 (2016).

27

28

**B.      Plaintiff's Fees Request Reflects a Significant Downward Adjustment of Class Counsel's Lodestar, Is Reasonable, and Should Be Awarded**

Class Counsel request a total of $85,000 in attorneys' fees and costs.  Class Counsel's *actual* lodestar is $170,517.50, and they have incurred $1,581.16 in recoverable costs.  Thus, the requested fee of $83,418.84 ($85,000 - $1,581.16) represents just 49% of counsel's actual lodestar amount.

The lodestar is determined by "multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Staton*, 327 F.3d at 965.  Class Counsel devoted more than 186.7 hours to this litigation since its inception in July 2020.  Rubin Decl. ¶ 9; Clapp Decl. ¶ 7.  This time was spent on numerous essential litigation tasks, including: (1) conducting pre-filing investigation, including legal research, witness interviews, and site visits; (2) drafting the complaint; (3) researching and retaining experts to opine on Nike's alleged liability and possible reasonable accommodations; (4) conducting settlement negotiations; (5) drafting and editing the Settlement Agreement; and (6) drafting the motion for final approval.  Rubin Decl. ¶ 12; Clapp Decl. ¶ 7.  These hours were reasonably expended in litigating this case and provide a proper basis for calculating Class Counsel's lodestar.  *Id.*  In addition, Class Counsel expect to spend at least 10 additional hours finalizing the settlement and ensuring Nike complies with its terms.  *Id.*

The rates used by Class Counsel to calculate their lodestar reflect "the prevailing market rates in the relevant community" for attorneys of like skill, experience, and ability.  *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *see also* Rubin Decl. ¶¶ 8-9; Clapp Decl. ¶ 6.[6]  Class Counsel's experience, reputation, and ability more than justify the hourly rates used in calculating counsel's lodestar (which are their current rates for commercial clients).  Rubin Decl. ¶ 9; Clapp Decl. ¶ 6.

---

[6]  Courts typically apply each attorney's current hourly rate, rather than the rate that applied at the time work was performed, in order to account for the delay in payment of attorneys' fees. *See Missouri v. Jenkins*, 491 U.S. 274, 282-84 (1989) (court should account for delay in payment by applying current rather than historic hourly rates); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 453-54 (9th Cir. 2010).

1    Using the reasonable hours and rates set forth in the Rubin and Clapp declarations,

2  Class Counsel's total lodestar in this matter is $170,517.50.  Yet plaintiffs ask this Court to

3  award a total of only $85,000 for all fees *and costs* counsel have incurred and will incur in

4  connection with this case.  The fact that counsel seek to recover only 49% of their lodestar

5  even though they would reasonably be entitled to their entire lodestar times a multiplier

6  (*Laffite*, 1 Cal.5th at 489) underscores the reasonableness of the requested fee award. *See,*

7  *e.g., G.F. v. Contra Costa Cty.*, 2015 U.S. Dist. LEXIS 159597, at *48 (N.D. Cal. Nov. 25,

8  2015) (finding fees request arising from class action settlement reasonable where the amount

9  requested "is significantly less than what these attorneys might otherwise be entitled to under

10  the lodestar analysis").

11    **C.    Class Counsel Are Entitled to Recover Their Reasonable Litigation Costs**

12         **and Expenses, Which Have Benefitted the Class**

13    Class Counsel also request reimbursement for the litigation costs they reasonably

14  incurred while litigating this matter, totaling $1,581.60. *See* Rubin Decl. ¶ 13; Clapp Decl. ¶

15  8. The costs are detailed in the supporting declarations of Class Counsel and are the normal

16  costs of litigation that are traditionally billed to paying clients. Rubin Decl. ¶ 13; Clapp Decl.

17  ¶ 8; *see, e.g., Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys

18  should recover reasonable out-of-pocket costs of the type ordinarily billed to paying clients);

19  *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).  As such, the costs should

20  be approved.

21  **VII.   THE COURT SHOULD APPROVE THE REQUESTED SERVICE AWARD**

22    Class Counsel request that the Court authorize a service award to the named plaintiff

23  Cali Bunn in the amount of $5,000.  The requested enhancement is reasonable in view of the

24  time plaintiff devoted to the litigation, the reputational and financial risk she undertook, and

25  the substantial benefit her efforts ultimately conferred to Nike's deaf and hard of hearing

26  customers in California.

27    Plaintiff spent many hours communicating with Class Counsel while they

28  investigated the facts and drafted the complaint.  Clapp Decl. ¶ 9. During settlement

16

negotiations, plaintiff was informed of each offer and counteroffer and provided valuable insight into what type of accommodations deaf and hard of hearing customers might want from a retailer like Nike. *Id.* Plaintiff faced a financial risk in bringing this case because her claim is novel, and if Nike had prevailed it likely would have sought to recover its litigation costs from plaintiff. Finally, plaintiff is providing Nike a general release of her claims, including any claims for statutory damages under the Unruh Act ($4,000 per violation) and the California Disabled Persons Act ($1,000 per violation). Agreement ¶¶ 16, 29-31.

There is ample case law finding $5,000 to be a reasonable amount for a service award. *See e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 at 463 (approving service awards of $5,000 to the two class representatives); *Hopson v. Hanesbrands, Inc.*, 2009 U.S. Dist. LEXIS 33900, *27-28 (N.D. Cal. April 3, 2009) (finding $5,000 service award to sole named plaintiff reasonable); *Jones v. Cal State Auto Ass'n*, 2009 U.S. Dist. LEXIS 101586, *14 (N.D. Cal. Oct. 27, 2009) (in the Northern District of California, a $5,000 service award is "presumptively reasonable"). The service award should be approved.

## VIII.   CONCLUSION

For the foregoing reasons, the Court should approve the proposed settlement, certify the Settlement Class pursuant to Rule 23(b)(2), and approve the proposed attorneys' fees, costs, and service award. However, in order to comply with 28 U.S.C. § 1715(d), the Court should not enter its order until April 13, 2021.

Dated:  January 26, 2021                   CLAPP & LAUINGER LLP


                                          */s/* James F. Clapp
                                          JAMES F. CLAPP


                                          MICHAEL RUBIN
                                          EVE H. CERVANTEZ
                                          ALTSHULER BERZON LLP
                                          Attorneys for Plaintiff
                                          CALI BUNN

17